**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO REGIONAL COUNCIL OF** | ) | |
| **CARPENTERS PENSION FUND, CHICAGO** | ) | |
| **REGIONAL COUNCIL OF CARPENTERS** | ) | |
| **WELFARE FUND, CHICAGO AND** | ) | |
| **NORTHEAST ILLINOIS REGIONAL** | ) | |
| **COUNCIL OF CARPENTERS APPRENTICE** | ) | |
| **AND TRAINEE PROGRAM, LABOR** | ) | |
| **MANAGEMENT UNION CARPENTRY** | ) | |
| **COOPERATION PROMOTION FUND, et al.** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **No. 09 CV 3983** |
| | ) | **Judge Joan H. Lefkow** |
| **WOODLAWN COMMUNITY** | ) | |
| **DEVELOPMENT CORPORATION, an** | ) | |
| **Illinois Corporation** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs, the Chicago Regional Council of Carpenters Pension Fund, the Chicago

Regional Council of Carpenters Welfare Fund, the Chicago and Northeast Illinois Regional

Council of Carpenters Apprentice and Trainee Program, the Labor/Management Union

Carpentry Cooperation Promotion Fund, and their Trustees ("Trust Funds"), filed this suit

against defendant, Woodlawn Community Development Corporation ("Woodlawn"), to recover

allegedly delinquent contributions to the several funds pursuant to the Employee Retirement

Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145.[1]  This

court's jurisdiction is invoked under 29 U.S.C. § 1132(e) and (f) and 29 U.S.C. § 185©).  Venue

is proper under 29 U.S.C. § 1132(e)(2).  Trust Funds seek payment for all delinquent benefit

contributions plus ERISA damages for the period of April 1, 2005 to March 31, 2007.  Before

the court are Trust Funds' motion for summary judgment [dkt. #60] and motion to strike

affidavits [dkt. #84].  For the reasons set forth below, Trust Funds' motions are granted in part

and denied in part.

**SUMMARY JUDGMENT STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a). The court must pierce the pleadings and assess the proof as presented in depositions,

answers to interrogatories, admissions, and affidavits that are part of the record to determine

whether there is a genuine need for trial.  *See* Advisory Committee Note to 1963 Amendment of

Fed. R. Civ. P. 56(e).  While the court must construe all facts in a light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty*

*Lobby*, *Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or

defense is factually unsupported, it should be disposed of on summary judgment.  *Celotex*

---

[1]  Under Section 502(a)(3) of ERISA, a participant, beneficiary or fiduciary may bring an
action to enjoin any act or practice which violates ERISA provisions or to obtain equitable relief
to redress such violations or enforce any provision of ERISA or the terms of the plan.  29 U.S.C.
§ 1132(a)(3).  Under Section 301 of Labor Management Relations Act, suits may be brought by
a labor organization for violation of contracts between an employer and the labor organization
representing the employees.  29 U.S.C. § 185(b).  Trust Funds have standing to pursue this
action against the defendants as third-party beneficiaries to the CBA.

*Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party

seeking summary judgment bears the initial burden of proving there is no genuine issue of

material fact. *Id.* at 323. In response, the non-moving party cannot rest on bare pleadings alone

but must use the evidentiary tools listed above to designate specific material facts showing that

there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th

Cir. 2000).

Northern District of Illinois Local Rule 56.1(a) requires the party seeking summary

judgment to submit, among other things, a statement of material facts, which consists of short,

numbered paragraphs and specific references within each paragraph to the affidavits, parts of the

record, and other supporting materials relied upon to support the facts set forth in that paragraph.

L.R. 56.1(a)(3). The nonmoving party must then submit a concise response to the movant's

statement of facts. *Id.* at 56.1(b)(3). Material facts improperly denied by the nonmoving party

are deemed admitted by the court. *Id.* at 56.1(b)(3)©; *Smith* v. *Lamz*, 321 F.3d 680, 683 (7th

Cir. 2003).

## BACKGROUND[2]

Trust Funds are multi-employer funded trusts that provide pension, welfare, training and

promotional benefits to members of the Chicago Regional Council of Carpenters and Joiners of

America (the "Union"). (Plfs. L.R. 56.1 ¶ 1.) Trust Funds are organized, administered and

operated pursuant to the Pension, Welfare, Trainee and Labor/Management Fund Trust

Agreements (collectively "Trust Agreements") and the Area Agreement. (*Id.* at ¶¶ 2–7.) Trust

Funds collect and manage contributions from employers who have agreed to be bound by the

---

[2] The facts set forth in this section are derived from the statements of fact and supporting
documents submitted by the parties, and are taken in the light most favorable to Woodlawn.

terms of the Trust Agreements and the Area Agreement. (*Id.* at ¶ 10.) The trustees for each Trust Fund have the authority to interpret and mange the terms of their respective Trust Agreements. (*Id.* at ¶ 12.)

Under the Area Agreement, an employer is prohibited from subcontracting jurisdictional work to nonunion subcontractors. (*Id.* at ¶ 14.)[3] The Area Agreement defines jurisdictional work to include "[w]ork at the construction site covered by the occupational jurisdiction of the 'UNION.'" (*Id.* at ¶ 13.)[4] If an employer subcontracts such work to a nonunion person or

---

[3] The Area Agreement states that:

> EMPLOYER shall not contract or subcontract any work coming within the jurisdictional claims of the UNION to any person, firm or corporation not covered by a Collective Bargaining Agreement with UNION, provided, however that the provisions of this paragraph shall apply only to the contracting and subcontracting of work to be done at the site of construction, alteration, painting or repair of a building, structure or other work.

> EMPLOYER in recognition of the territorial and occupational jurisdiction of the UNION, shall not subcontract or contract out jobsite work coming within the jurisdiction of the Carpenters Union nor utilize on the jobsite the services of any other person, company or concern to perform such work that does not observe the same wages, fringe benefits, hours and conditions of employment as enjoyed by Employees covered by this Agreement.

(Plfs. L.R. 56.1 Ex. E §§ 3.2–3.3.)

[4] The Area Agreement defines work falling within the jurisdiction of the Union to include:

> [W]ork at the construction site covered by the occupational jurisdiction of the 'UNION' including, but not limited to, the milling, fashioning, joining, assembling, erection, fastening or dismantling of all material of wood, plastic, metal, fiber, cork, and composition, and all other substitute materials; the handling, erecting, installing and dismantling of machinery and equipment, hydraulic jacking and raising, and the manufacturing of all material where the skill, knowledge and training of the Employees are required, either through the operation of machine or hand tools [and] all Journeymen, Foremen, Apprentices and Trainees engaged in work as Carpenters and Joiners, Millwrights, Pile Drivers, Bridge Dock and Wharf

(continued...)

-4-

company, then the employer shall either require the subcontractor to become a signatory to the Area Agreement or maintain daily records of the subcontractor's employee's jobsite hours and pay the requisite fringe benefit contributions for the work performed by those employees. (*Id.* at ¶ 15.)[5] An audit of the employer is one way for Trust Funds to determine how much the employer owes for unpaid contributions for its nonunion subcontractors.

Woodlawn is an Illinois corporation that owns one multi-family residential property and manages other multi-family residential properties for the Chicago Housing Authority ("CHA") and various entities. (Def. Resp. L.R. 56.1 ¶¶ 21–22; Def. Answer ¶ 4.) On January 25, 1978, Woodlawn signed a contract ("1978 Contract") with the Union, whereby it agreed to be bound by the terms and conditions of the Area Agreement and Trust Agreements. (Plfs. L.R. 56.1 ¶ 23.) Woodlawn claims it terminated the 1978 Contract in the mid to late 1980s, although it does not have a copy of the written termination. (Def. Resp. L.R. 56.1 ¶ 26; Millison Aff. ¶ 6.)

---

[4](...continued)

> Carpenters, Divers, Underpinners, and Timbermen and Core-drillers; Ship Wrights, Boat Builders and Ship Carpenters, Joiners and Caulkers, Cabinet Makers, Bench Hands, Stair Builders, Millmen, Wood and Resilient Floor Layers, and Finishers, Carpet Layers, Shinglers, Siders, Insulators, Acoustic and Dry Wall Applicators; Shorers and House Movers; Loggers, Lumber and Sawmill Workers; Casket and Coffin Makers; Furniture Workers, Reed and Rattan Workers; Single Weavers, Box Makers, Railroad Carpenters and Car Builders and Show, Display and Exhibition Workers and Lathers, regardless of material used; and all those engaged in operation of wood working or the machinery required in the fashioning, milling or manufacturing of products used in trade, or engaged as helpers to any of the above divisions or subdivisions, and the handling, erecting and installing mater on any of the above divisions or subdivisions; burning, welding, rigging and the use of any instrument or tool for layout work, incidental to the trade.

(Plfs. L.R. 56.1 Ex. E § 1.1.)

[5] The contribution rate for employers was $11.02 per hour from October 2004 through September 2005; $12.68 per hour from October 2005 through September 2006; and $14.48 per hour from October 2006 through September 2007. (Lagalo Aff. ¶ 17.)

In April 2005, Trust Funds audited Woodlawn's fringe benefit contributions for the period of April 1, 2002 to March 31, 2005 and determined that Woodlawn owed $12,937.53 for subcontracting work to nonunion companies or persons. (Plfs. L.R. 56.1 ¶¶ 29–30.) Although Woodlawn believed that it had previously terminated the 1978 Contract, it paid the claimed amount to avoid litigation. (*Id.* at ¶ 31; Millison Aff. ¶ 6.) After making the payment, Woodlawn notified Trust Funds that it considered the contract terminated at that time. (Millison Aff. ¶ 6.) Trust Funds dispute these facts and has moved to strike the evidence upon which Woodlawn relies. (*See* Part I, *infra*.)

In 2007, Trust Funds again audited Woodlawn, this time for the period of April 1, 2005 to March 31, 2007. (Plfs. L.R. 56.1 ¶ 32.) Trust Funds hired James Egan & Associates ("Egan") to conduct the compliance audit ("initial audit"). (*Id.*) Egan reviewed, *inter alia*, bank statements, contribution reports, federal tax return filings and unemployment wage reports. (*Id.* at Ex. O.) Egan relied on a sample of Woodlawn's invoices to estimate which of the payments made to nonunion subcontractors listed on Woodlawn's check register were for work falling within the jurisdiction of the Union. (Plfs. L.R. Ex. L, Ragona Dep. at 41–44; Ex. Q.) For example, if Egan had three invoices for one subcontractor, and two of them showed that the subcontractor performed jurisdictional work, Egan assumed that all of the remaining check registry entries for that subcontractor were payments for jurisdictional work. (*Id.*) As long as the subcontractor performed some jurisdictional work during the audit period, Egan assumed that all of its work fell within the jurisdiction of the Union, unless contradicted by other documentation. (*Id.*) Using this method, Egan concluded that Woodlawn owed $76,153.25 in contributions for 5,980 hours of nonunion jurisdictional work completed by eight nonunion

subcontractors.[6] (*Id.* at ¶ 33.) Trust Funds presented Woodlawn with Egan's findings and Woodlawn refused to pay. (*Id.* at ¶ 34.)

On July 1, 2009, Trust Funds filed a four count complaint seeking the outstanding contributions identified in the initial audit. (Dkt. #1.) Nathaniel Lagalo, the Audit Coordinator for Trust Funds, was responsible for gathering additional documents and adjusting the initial audit in this case. (Plfs. L.R. 56.1 Ex. K Lagalo Aff. ¶¶ 1 & 3.) During the course of the litigation, Lagalo received previously undisclosed invoices describing payments Woodlawn made to nonunion subcontractors, including payments for jurisdictional work. (*Id.* at ¶¶ 11 & 12.) Based on these records, Lagalo prepared a revised estimate of Woodlawn's outstanding contributions ("adjusted audit"). (*Id.* at ¶ 13.) The adjusted audit revealed that Woodlawn owed Trust Funds $83,584.20 for 6,482 hours of nonunion jurisdictional work. (Plfs. L.R. 56.1 ¶ 34.)

On March 24, 2011, Trust Funds moved for summary judgment on their claims seeking unpaid contributions, liquidated damages, interest, auditors' fees and attorney's fees. (Dkt. #60.) In its response, Woodlawn denied liability and attached in support the affidavits of Carole Millison, Woodlawn's former president, Georgette Reynolds, in-house counsel, and Ray Smith, controller. (Dkt. #80, Attachments 1–3.) Trust Funds then moved to strike the affidavits claiming that Woodlawn failed to comply with the rules of discovery. (Dkt. #84.) Each motion is considered in turn.

## DISCUSSION

### I.    Motion to Strike Affidavits

---

[6] These subcontractors include All Trades Remodeling, Chicago One MKC Construction, Consola Construction, Frank Gibson Remodeling, Jan General Contractors, Johnson Construction, MI Landscaping & Construction and Taheri Construction. (Plfs. L.R. 56.1 ¶¶ 35, 43, 51, 59, 67, 75, 83, 91.)

Trust Funds have moved to strike the affidavits of Millison, Reynolds and Smith because (1) Woodlawn failed to disclose them as witnesses under Rule 26; (2) Woodlawn failed to produce them as Rule 30(b)(6) deponents; and (3) they have no personal knowledge of the facts to which they testify. (*See* Dkt. #84 & #90.)

### A.     Federal Rule of Civil Procedure 26

Trust Funds argue that Woodlawn failed to supplement its Rule 26(a) initial disclosures to identify Millison, Reynolds and Smith as individuals likely to have discoverable information, and as such, their affidavits must be stricken. (Dkt. #90 at 2 & Ex. A.) Rule 26(e) requires a party to timely supplement its Rule 26(a) disclosures if it learns that a disclosure or response is incomplete or incorrect in some material respect and the additional or corrective information has not otherwise been made known to the other party. Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

From the record, it does not appear that Woodlawn's failure to supplement its Rule 26(a) disclosures was substantially justified or harmless. Nevertheless, because Trust Funds raised this argument for the first time in their reply brief and not their initial motion (*see* dkt. #90 at 2), the court will not consider it. *See, e.g., Wright* v. *United States*, 139 F.3d 551, 553 (7th Cir. 1998) (arguments in support of a motion that are raised for the first time in a reply brief are waived); *Wilson* v. *City of Chicago*, No. 09 C 2477, 2009 WL 3242300, at *3 n.2 (N.D. Ill. Oct. 7, 2009) ("[parties] waive arguments that they raise for the first time in reply"); *Burks* v. *U.S.*

*Postal Serv.*, No. 08 C 5869, 2009 WL 1097508, at *3 n.5 (N.D. Ill. Apr. 17, 2009) ("it is well

settled that parties waive arguments raised for the first time in reply"); *accord Canadian Pac.*

*Ry. Co.* v. *Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 WL 782698, at

*11 n.1 (N.D. Ill. Apr. 6, 2005); *In re Standard Foundry Prods., Inc.*, Nos. 96 C 7230, 95 B

1200, 1998 WL 729586, at *6 n.3 (N.D. Ill. Oct. 15, 1998).

### B.     Federal Rule of Civil Procedure 30(b)(6)

Federal Rule of Civil Procedure 30(b)(6) states that when a party notices a corporation

for deposition, the latter must "designate one or more officers, directors, or managing agents, or

designate other persons who consent to testify on its behalf."  Fed. R. Civ. P. 30(b)(6).  The rule

also states that "[t]he persons designated must testify about information known or reasonably

available to the organization."  *Id.*  Under this rule, a corporation is required to educate its

designee concerning all "reasonably available" information, even if such information is not

within the knowledge of the corporation's current employees.  Fed. R. Civ. P. 30(b)(6); *see*

*Brazos River Auth.* v. *G.E. Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) ("[defendant] violated

rule 30(b)(6) by failing to prepare [its rule 30(b)(6) witness] with respect to issues that although

not within his personal knowledge, were within the corporate knowledge of the organization");

*Newman* v. *Borders, Inc.*, 257 F.R.D. 1, 3 (D.D.C. 2009) ("a party must produce as its 30(b)(6)

designee a person who can speak knowingly as to the topic and, if necessary, educate that

designee so that she can do so"); *Hooker* v. *Norfolk S. Ry. Co.*, 204 F.R.D. 124, 126 (S.D. Ind.

2001) (Rule 30(b)(6) "imposes a duty upon the named business entity to prepare its selected

deponent to adequately testify not only on matters known by the deponent, but also on subjects

that the entity should reasonably know"); *United States* v. *Taylor*, 166 F.R.D. 356, 361

(M.D.N.C. 1996) ("[I]t is not uncommon to have a situation . . . where a corporation indicates that it no longer employs individuals who have memory of a distant event or that such individuals are deceased. . . . These problems do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."); *see generally* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2103 (3d ed.).

The rule is intended to curb the practice of "'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." Advisory Committee Note to 1970 Amendment to Fed. R. Civ. P. 30(b)(6) (citation omitted). Failure to educate a Rule 30(b)(6) designee is a sanctionable offense under Rule 37(d). *See Black Horse Lane Assoc., L.P.* v. *Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) ("when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)") (internal quotation marks and citation omitted); *accord Lincoln Diagnostics, Inc.* v. *Panatrex, Inc*., No. 07-CV-2077, 2009 WL 395793, at *8 (C.D. Ill. Feb. 18, 2009) ("[C]ourts have determined that sanctions under Rule 37(d) may be appropriately granted where a corporation designates a corporate representative for deposition under Rule 30(b)(6) who is not knowledgeable about relevant facts. . . . Rule 37(d) allows a court to impose various sanctions for a party's failure to comply with Rule 30(b)(6), including the preclusion of evidence.").

Trust Funds issued a Rule 30(b)(6) deposition notice to Woodlawn on March 23, 2010. (Dkt. #84 at 1 & Ex. A.) The notice stated that Woodlawn's Rule 30(b)(6) representative should

be prepared to testify regarding the work performed by subcontractors identified in the audit report and about "[a]ny objections, defenses or explanations why [Woodlawn] does not owe any of the contributions in the audit report . . . ." (Dkt. #84 Ex. A.) On August 11, 2010, this court ordered Woodlawn to produce a representative with knowledge concerning the work performed by subcontractors and any defenses Woodlawn intended to raise. (Dkt. #46.) On September 9, 2010, this court granted Trust Funds' motion to compel Woodlawn to produce its Rule 30(b)(6) representative and responsive documents. (Dkt. #50.) Over one month later, on October 13, 2010, Woodlawn designated three Rule 30(b)(6) witnesses including Tina Tanner, Sandra Harris and Mike Grady. (Dkt. #84 Ex. E.) Trust Funds' counsel expressed doubt that these witnesses possessed the requisite knowledge (dkt. #84 Ex. F), but Woodlawn assured counsel that these were the correct corporate designees. (Dkt. #84 Ex.G.)

Trust Funds deposed Harris, Tanner and Grady, all three of whom disavowed any knowledge of the 1978 Contract or termination thereof. (Dkt. #61 Ex. G Harris Dep. at 13, 15; Dkt. #61 Ex. H Tanner Dep. at 49–50; Dkt. #61 Ex. I at 26–27.) Nevertheless, in an attempt to defeat summary judgment, Woodlawn now claims that it terminated the 1978 Contract prior to the audit period, relying solely on Millison's affidavit in support. (Dkt. #80 at 2; Def. Resp. L.R. 56.1 ¶ 26; Millison Aff. ¶ 6.)[7] Woodlawn cannot have its cake and eat it, too.

Millison was a thirty-eight year Woodlawn employee and its former president. (Millison Aff. ¶ 3.) Woodlawn knew or should have known that Millison had information relevant to

---

[7] In her affidavit, Millison testifies that "[i]n the mid to late 1980s, WCDC terminated the Agreement with Plaintiff in writing. WCDC does not have a copy of said written termination because the termination occurred more than twenty years ago. The issue of termination arose during an audit conducted 2002–2005. WCDC expressed the fact that it had terminated the Agreement; however to avoid protracted litigation, WCDC paid the sums claimed and again notified Plaintiff that it considered the Agreement terminated at that time." (Millison Aff. ¶ 6.)

Trust Funds' Rule 30(b)(6) request.  Woodlawn provides no compelling reason why the information contained in Millison's affidavit was not "reasonably available" to the corporation, or why its Rule 30(b)(6) designees possessed no information concerning the contract at issue. Trust Funds' Rule 30(b)(6) notice explicitly requested Woodlawn to designate a Rule 30(b)(6) witness with knowledge of the corporation's defenses.  Assuming Millison's testimony is truthful, Tanner, Grady and Harris were inadequately prepared to serve as Rule 30(b)(6) designees.  Woodlawn had multiple opportunities to comply with Trust Funds' request and, when questioned, Woodlawn assured counsel that Harris, Tanner and Grady possessed the requisite knowledge.  Woodlawn cannot fail to educate its Rule 30(b)(6) deponents and then rely on the testimony of a knowledgeable witness to defeat summary judgment.  Such "bandying" is prohibited by the rule.  Paragraph six of Millison's affidavit is stricken.  Because Reynolds's and Smith's affidavits contain no mention of the 1978 Contract, their testimony may stand.

### C.    Personal Knowledge

Under Federal Rule of Civil Procedure 56(c)(4), an affidavit or declaration used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Federal Rule of Evidence 602 also states that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  Here, both Millison and Smith testify to matters that are outside their personal knowledge.  For example, both witnesses state that the audit report was "the result of the guesswork of the auditor."  (Millison Aff. ¶ 9; Smith Aff. ¶ 6.)  The affiants do not explain how they have personal knowledge of the

auditor's methods; they do not claim to have participated in the audit process or reviewed the auditor's findings. Paragraph nine of Millison's affidavit and paragraph six of Smith's affidavit are stricken.[8]

Additionally, Millison claims that "*all* of the contractors who performed work [for Woodlawn] were employed on behalf of the [CHA] and other entities" and that Woodlawn "acted as an agent for CHA and other entities and said contractors were not hired to perform any work for [Woodlawn]." (Millison Aff. ¶¶ 7–8) (emphasis added). Millison admits that her employment with Woodlawn ended in 2006. (Millison Aff. ¶ 3.) The audit period in this case was from April 1, 2005 to March 31, 2007. Given that Millison was not employed by Woodlawn during the last year of the audit period, there was no way for her to know that *all* of the contractors hired during that period were working for CHA or other entities.[9] Paragraphs seven and eight of Millison's affidavit are stricken.

Finally, Trust Funds claim that Reynolds's affidavit should be stricken because she lacks personal knowledge concerning the production of Rule 30(b)(6) documents. (Dkt. # 84 at 7–8.) As Woodlawn's in-house counsel, however, Reynolds "oversaw the gathering and production of

---

[8] Trust Funds also claim that Millison's and Reynolds's affidavits "raise a serious question about whether Woodlawn is proceeding in good faith" in compliance with Federal Rule of Civil Procedure 11. As to Millison, the relevant portion of her affidavit has been stricken. *See* Part I.B., *supra*. As to Reynolds, Trust Funds dispute her claim that "[a]ll documents responsive to Plaintiff's 30(b)(6) request that WCDC could locate were produced" because, according to Trust Funds, Woodlawn did not produce any documents at the depositions of its Rule 30(b)(6) designees. (Reynolds Aff. ¶ 6; Dkt. #84 at 7 n.1.) One of the exhibits in this case, however, is an email from Woodlawn to Trust Funds dated December 10, 2010 with an attachment entitled "30b6 documents." (Dkt. #80 Attachment 2.) The text states "[h]ere are some 30(b)(6) documents from our client." (*Id.*) Based on this record, it appears that Woodlawn produced responsive documents prior to its Rule 30(b)(6) depositions, and the court therefore declines to sanction Woodlawn for failing to proceed in good faith.

[9] If Millison does have personal knowledge of this fact she does not explain how she obtained it.

documents responsive to Plaintiff's Rule 30(b)(6) request." (Reynolds Aff. ¶ 5.) This knowledge is sufficient for purposes of the rule.

## II.     Motion for Summary Judgment

Trust Funds move for summary judgment under ERISA section 515, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. According to the Seventh Circuit, "[s]ound national pension policy demands that employers who enter into agreements providing for pension contributions not be permitted to repudiate their pension promises." *Cent. States, Se. & Sw. Areas Pension Fund* v. *Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153 (7th Cir. 1989). As such, employers are obligated by law to make pension contributions on behalf of employees covered under collective bargaining agreements. *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund* v. *Hartlage Truck Serv., Inc.*, 991 F.2d 1357, 1361 (7th Cir. 1993).

Trust Funds claim that under the 1978 Contract, Trust Agreements and Area Agreement, Woodlawn was obligated to make fringe benefit contributions on behalf of nonunion subcontractors that it paid to perform jurisdictional work, and because Woodlawn failed to make the required contributions summary judgment is appropriate. Woodlawn disagrees, claiming there is a genuine issue of material fact as to whether (1) it terminated the 1978 Contract prior to the audit period; (2) nonunion subcontractors performed jurisdictional work; and (3) the auditor's findings are reliable. (Dkt. #80; Def. Resp. L.R. 56.1 ¶¶ 34, 35, 43, 51, 59, 67, 75, 83, 91.)

-14-

###### A.      Termination of the 1978 Contract

Woodlawn relies solely on Millison's affidavit to create a genuine issue of fact as to whether it terminated the 1978 Contract prior to the audit period.  (Dkt. #80 at 1–2; Def. Resp. L.R. 56.1 ¶ 26.)  Because the relevant portion of Millison's affidavit has been stricken, Woodlawn's argument is conclusory and unsupported by the facts.  *See* Fed. R. Civ. P. 56(c)(1) & (e);  *Payne* v. *Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Conclusory allegations, unsupported by specific facts, will not suffice.") (citation omitted); *Smith,* 321 F.3d at 683 ("[A] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.") (citation omitted); *Bone Care Int'l, LLC* v. *Pentech Pharm., Inc.*, 741 F. Supp. 2d 854, 856 n.1 (N.D. Ill. 2010) ("Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement.") (citation omitted); *Malec* v. *Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial.").  This argument will not be considered by the court.

Additionally, the record does not support Woodlawn's argument that it terminated the 1978 Contract prior to the audit period.  The facts show, for example, that in 2004 Woodlawn submitted contribution reports to the Union whereby it agreed "to be bound by and ratify, confirm, and adopt all of the provisions of the Area Collective Bargaining Agreement and the Agreements and Declarations of Trust under which the Chicago District Council of Carpenters Fringe Benefit Funds are maintained."  (Dkt. #84 Ex. I.)  Additionally, on February 25, 2008, Trust Funds received a letter from Woodlawn's counsel stating that Woodlawn "has been a party

to a contract between the Union and the Mid-America Regional Bargaining Association which expires on May 31, 2008. This letter is to officially notify the Union that [Woodlawn] intends to terminate this agreement upon its expiration on May 31, 2008." (*Id.*) These facts show that Woodlawn did not terminate the 1978 Contract prior to the audit period.

### B.    Jurisdictional Work by Nonunion Subcontractors

Woodlawn next claims that the court should deny Trust Funds' summary judgment motion because there is a genuine issue of material fact as to whether nonunion subcontractors performed jurisdictional work. (Dkt. #80 at 2.) Woodlawn claims that Trust Funds' motion must be denied because it acted as an agent for CHA and other entities, and any nonunion subcontractors were hired to perform work not for Woodlawn, but for other entities. (Def. Resp. L.R. 56.1 ¶¶ 35, 43, 51, 59, 67, 75, 83, 91.)[10] Woodlawn, however, declined to raise this argument in its response brief and addressed it only in its response to Trust Funds' Local Rule 56.1 statement of facts. (*See id.*; Dkt. #80 at 2.) As such, the court considers this argument waived. *See Cent. States, Se. & Sw. Areas Pension Fund* v. *Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived."); *accord United States* v. *Adams,* 625 F.3d 371, 378 (7th Cir. 2010); *see also Malec*, 191 F.R.D. at 585 (the Local Rule 56.1 statement of facts "is a document separate from the supporting memorandum; it is neither a supplement to nor a surrogate for the memo").

### C.    Auditor's Findings

_____

[10]  Woodlawn also denies that it hired nonunion subcontractors because "the contract between Plaintiffs and Defendant was terminated" and therefore "the subcontractors could not have performed jurisdictional work." (Dkt. #80 at 2.) As previously discussed, this argument is unsupported by the facts and is rejected. *See* Part II. A., *supra*.

Finally, Woodlawn claims that summary judgment is inappropriate because the audit reports were the result of guesswork. (Dkt. #80 at 2–3.) Woodlawn challenges the sampling method used by Egan in the initial audit, claiming that because Egan reviewed only a handful of invoices, Trust Funds cannot assume that all of the work performed by nonunion subcontractors fell within the jurisdiction of the Union.[11] Trust Funds counter that the initial audit report is irrelevant because the motion for summary judgment is based on the findings of the adjusted audit, and Woodlawn offers no evidence to contradict that report. (Dkt. #86 at 4–5.)

On this issue Trust Funds have not met their burden. First, Trust Funds fail to show that Lagalo did not rely on the initial audit to generate the adjusted audit, and as such, cannot show that the sampling concerns raised by Woodlawn are irrelevant. According to Trust Funds, the adjusted audit "is based on actual invoices from Chicago One MKC Construction, Johnson Construction, MI Landscaping & Construction and Taheri Contracting . . . [and] the actual invoices reviewed by [Egan.]" (Plfs. Resp. Def. L.R. 56.1 Add. Facts ¶ 2.) Even assuming that Egan and Lagalo reviewed all of the invoices identified in this case, there are still a number of check registry entries with no corresponding invoice.

For example, in the initial audit, the check registry for MI Landscaping & Construction had 49 entries but only 3 corresponding invoices. Based on a review of these 3 invoices, Egan

---

[11] Woodlawn also argues that the adjusted audit report is "arguably inadmissable as a document prepared in anticipation of litigation." (Dkt. #80 at 3.) Although Woodlawn cites no authority, it was presumably attempting to argue that the audit report is inadmissible hearsay to which no exception applies. *See* Fed. R. Evid. 803(6); *United States* v. *Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993) (It is a "well-established rule that documents made in anticipation of litigation are inadmissible under the business records exception."). In considering the admissibility of a similar audit report, however, the Seventh Circuit held that the report qualified as a summary of records kept in the regular course of business and was therefore admissible under Federal Rule of Evidence 1006. *Trustees of Chicago Plastering Inst. Pension Trust* v. *Cork Plastering Co.*, 570 F.3d 890, 901 (7th Cir. 2009).

concluded that all of the 49 payments made to MI Landscaping & Construction during the audit period were for jurisdictional work. (Dkt. #61 Ex. Q; Ragona Dep. at 41–44.) It is true that nearly 150 new invoices[12] were produced through discovery in this case, including many for MI Landscaping & Construction. (*See* Dkt. #61 Ex. U, X, Y, AA.) Most, if not all, of these new invoices, however, reflect monies paid for work that was not listed on Egan's original check registry sheet. (*See* Dkt. #61 Ex. Q, U, X, Y, AA.) Based on these new invoices, Lagalo increased the estimate of delinquent contributions owed by Woodlawn by $7,430.95, excluding interest and fees. (Plfs. L.R. 56.1 ¶ 34.) Thus, Lagalo did not use the new invoices to determine whether work previously categorized as jurisdictional did, in fact, fall within the jurisdiction of the Union. Instead, he used the new invoices to increase his estimate of the delinquency. It appears, therefore, that the adjusted audit relied, at least in part, on the same sampling method used by Egan.

It is entirely possible that Trust Funds were forced to rely on sampling because Woodlawn failed to maintain or produce the missing invoices in this case. It is unclear to the court, however, whether this sampling method is a common practice in the accounting industry, and Trust Funds have failed to explain as much in their brief. The court is persuaded that under the 1978 Contract, Woodlawn was bound by the terms of the Trust and Area Agreements during the audit period. The court also concludes that Woodlawn paid at least some nonunion contractors to perform jurisdictional work. There is a genuine issue of material fact, however, as to whether all the payments included in the adjusted audit report were made for jurisdictional work.

---

[12] A number of these invoices are for work performed outside of the audit period.

Accordingly, the court grants summary judgment as to Woodlawn's liability for delinquent contributions during the audit period, but denies it as to the amount owed. The amount of reimbursement due is reserved for resolution at trial or, preferably, by the parties without the expense of litigating the question further. The damage amount shall include unpaid contributions, interest, liquidated damages, reasonable attorney's fees, costs and auditor's fees pursuant to 29 U.S.C. § 1132(g)(2)(B)–(E); *see Chicago Dist. Council of Carpenters Pension Fund* v. *Ferm Siding, Inc.*, No. 95 C 2351, 1996 WL 604022, at *3–4 (N.D. Ill. Oct. 19, 1996).

## ORDER

For the foregoing reasons, Trust Funds' motions to strike [dkt. # 84] and for summary judgment [#60] are granted in part and denied in part. This case will be called for status on January 24, 2012 at 8:30 a.m., at which time the parties shall report on all matters that need to be addressed so that final judgment may be entered.


Dated:  December 15, 2011                      Enter: _____

                                                      JOAN HUMPHREY LEFKOW
                                                      United States District Judge